### THE ADELINA v. THE GULF OF TARANTO.

(District Court, E. D. Pennsylvania. January 18, 1895.)

1. COLLISION—IN DOCK—NEGLIGENCE.
    A steamer is at fault in entering a dock already occupied by a vessel, the dock being so small that at low water the steamer, being on the ground, careens against and crushes the vessel.

2. SAME.
    The fact that the vessel already in the dock changed her position, moving back instead of forward, did not make her liable for the injury, it

being a matter of conjecture whether her change of position placed her in greater peril, or whether she would have improved her situation by moving forward.

**3. Same—Advice of Harbor Master.**

The fact that the harbor master advised the steamer to enter the dock will not excuse it.

Libel by the Adelina against the Gulf of Taranto.

Henry R. Edmunds, for the Adelina.

N. Dubois Miller and J. Rodman Paul, for the Gulf of Taranto.

BUTLER, District Judge. The libel charges that on the 2d day of August, 1893, the bark Adelina arrived at the port of Philadelphia from the port of Rio Janeiro, Brazil, in ballast, and proceeded to pier 40 South Wharves, Delaware river. That the vessel commenced to discharge her ballast on August 3, 1893, and while engaged in so discharging the British steamship Gulf of Taranto arrived from Hamburg and docked on the south side of pier 39, alongside libelant. That before the steamship was docked those in charge of her were notified that there was not room enough in the dock for both vessels to lie together in safety; that at low water the steamship would damage the bark. That notwithstanding this warning those in charge of the steamship persisted in forcing her into the dock, where she subsequently, at low water, took the ground and careened over, striking the bark Adelina and forcing her against the side of the pier where she was lying; that by reason thereof the bark was forced over and crushed against the pier, where she was held between the steamship and pier, and hung out of the water until the tide rose, when the bark was taken to a place of safety, and it was found that both sides of the bark were crushed in, her planking and timbers split, broken and started, and that she suffered damages in the sum of $5,000 as near as this libelant can estimate.

The answer denies the fault thus imputed, says the respondent was safely and properly docked; that although the bark declined to move forward as she was requested to do, near the head of the dock, there was still ample space as the vessels lay, but that later in the evening the bark moved back 20 or 30 feet where there was less room; that subsequently, at the bark's request the steamer put out a fender, but that owing to the change made in the bark's position, the vessels pressed together as the tide fell, and that both were consequently injured—the steamer to the extent of $2,500, for the recovery of which she has libeled the bark.

The testimony presents the following questions: (1) Was the steamer at fault in entering the dock? (2) Was the bark at fault in moving back? (3) Was the steamer at fault in failing to change her position after the bark moved back?

On the first hearing I was inclined to believe that the second and third questions should be answered affirmatively, and both vessels consequently be condemned. The first I was inclined to think should receive a negative answer. It was deemed wise, however, to consult assessors, and Messrs. Barrett & Call were selected and interrogated on the subject. Their answers, as well as the interrogatories pro-

pounded, are on file. After reading the answers it was deemed proper to submit the assessors to examination by counsel. They were so examined, and the case again heard.

Their answers and testimony shed new light on the case; and have modified my original impressions. They are intelligent and experienced masters of vessels, and of course entirely impartial. They inspected the dock, and on measuring the bark found it to be wider than was before supposed.

I am now convinced that the first question should be answered affirmatively, and that the second and third should not. I believe the steamer was wrong in entering the dock; that the room was insufficient to allow the two vessels to lie there with safety at low tide. Of course it is possible the bark might have improved her situation after the steamer entered by crowding forward; but this is mere conjecture. The witnesses disagree about it, and the truth cannot be ascertained. In my judgment no prudent and intelligent master familiar with the dock, knowing the depth of water at low tide, would have taken the steamer in. When in she was entirely unmanageable; aground in front, her stern far out in the stream and swept by the tide, she was helpless. Resting substantially against the bark, when entered, as the water fell she would necessarily press over and injure her.

It is not necessary to consider the powers of the harbor master, or his assistant who is said to have advised the entry. He certainly could not authorize the steamer to crowd in where the room was insufficient, and relieve her from the consequences of injuring the bark.

The latter did not improve her chances of escape, apparently, by moving back; indeed she seems to have diminished them. But this too is conjecture: The truth cannot be known. An intelligent master present at the time, could form a more reliable judgment than can be formed from the conflicting testimony taken. The officers of the bark were seeking safety; and looking at the situation as presented to their view they believed that prudence required the movement they made. The fact that the bark was soon after jammed and immovable, seems to indicate that their judgment was at fault, but, as before suggested, this indication may be misleading; the tide was falling and other circumstances may have intervened to contribute to the disappointment they encountered. If imperiled by the steamer's improper entry no more was required of the bark than the exercise of such skill and judgment as should be exercised under the circumstances, to avoid the danger threatened. It certainly would not be safe to hold that she did not exercise such care and skill.

The libel is sustained; and the cross libel filed by the steamer is dismissed.